UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THEODORE V. MOTRIUK,

    Plaintiff,                                      Civil Action No. 11-13249

v.                                               HON.  NANCY G. EDMUNDS
                                                 U.S. District Judge
                                                 HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Theodore V. Motriuk brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. # 20] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #15] be DENIED.

## PROCEDURAL HISTORY

       Plaintiff applied for DIB and SSI on February 26, 2008, alleging disability beginning on September 15, 2006 (Tr. 111-118).  After the initial denial of benefits, Plaintiff requested an administrative hearing, held on December 15, 2009 before Administrative Law Judge

("ALJ") Mary Ann Poulose (Tr. 32). Plaintiff, represented by attorney Jonas Sniokaitis, testified by telephone (Tr. 41-57). Vocational Expert ("VE") Michele Peter also testified (Tr. 58-61). On January 6, 2010, ALJ Poulose found Plaintiff not disabled (Tr. 15-16). On May 23, 2011, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the final decision on July 26, 2011.

## BACKGROUND FACTS

Plaintiff, born June 18, 1959, was 50 on the date of the ALJ's decision (Tr. 16, 111). He completed 11th grade and worked previously as a hairdresser and floor installer (Tr. 151-156). He alleges disability as a result of a tear of the rotator cuff (Tr. 150).

### A. Plaintiff's Testimony

*Plaintiff's counsel, appearing by video conference from Oak Park, Michigan, stated that Plaintiff did not appear for the hearing because he wanted to "take care of" an outstanding arrest warrant first (Tr. 34). Counsel stated that Plaintiff would be willing to testify by cell phone from Florida (Tr. 36-38). Plaintiff, then connected by telephone, stated that he had not appeared for the hearing because he had helped a friend transport the friend's mother to Florida (Tr. 38).*

Plaintiff, right-handed, began his sworn testimony by stating that he currently lived with his wife in Rochester, Michigan (Tr. 41). He denied receiving a GED but stated that he carried a 4.0 average at a local community college (Tr. 42). He reported that he had received a certificate from a hair dressing school, but later became a floor installer (Tr. 42). He later stated that he was a "union carpenter" (Tr. 51). He alleged that he was unable to work as a

result of a workplace shoulder injury (Tr. 42). He stated that before the most recent recurrence of shoulder problems, he underwent three shoulder surgeries, the most recent in 2003 (Tr. 43). He acknowledged that he was able to work following his third shoulder surgery (Tr. 44). He stated that at one point, he was taking 1,800 milligrams a day of morphine for shoulder pain (Tr. 44).

Plaintiff stated that he did not hold a current driver's license (Tr. 45). He alleged that the overuse of his right arm due to left shoulder problems now caused right elbow pain, adding that he had recently received a right elbow steroid injection (Tr. 46, 47). He stated that arm problems obliged him to take baths rather than showers (Tr. 46). He stated that he was unable to reach overhead on the left (Tr. 46). He denied problems writing or with other fine manipulations (Tr. 47). He acknowledged that he was able to take a garbage bag to the curb (Tr. 48). He denied problems sitting, standing, or walking, but alleged problems kneeling (Tr. 48). He stated that cold weather exacerbated upper extremity problems (Tr. 49). He denied the current use of morphine, stating that his medicine was limited to anti-inflammatories (Tr. 50).

Plaintiff testified that on a typical day, he ate breakfast, watched television, and read (Tr. 52). He opined that he required a shoulder replacement (Tr. 52). In response to questioning by his attorney, he stated that his pain was constant (Tr. 53). He reiterated that he no longer took morphine, stating that he had been weaned off the medication over a 30-day period (Tr. 54). He stated that his shoulder pain was unresponsive to Vicodin (Tr. 57). He stated that his wife and he had recently purchased a house for the purpose of renovating

it, then selling it at a profit, but that his shoulder problems prevented him from doing repair work (Tr. 54). He denied that shoulder pain caused concentrational problems but stated that his physical problems obliged him to perform household chores slowly (Tr. 55). He opined that his shoulder problems precluded all work (Tr. 56).

### B. Medical Evidence

### 1. Treating Sources[1]

In August, 2007, Plaintiff sought emergency treatment for left shoulder pain (Tr. 340). He was prescribed Vicodin (Tr. 341). In October, 2007, Plaintiff again sought treatment for left shoulder pain (Tr. 209). He was prescribed a Fentanyl patch (Tr. 194). X-rays of the left shoulder showed "slight widening of the AC joint space" but no other abnormalities (Tr. 184, 216, 227, 235). An MRI of the left shoulder taken later the same month was unremarkable (Tr. 183, 215, 234, 339). In January, 2008, Kenneth J. Richter, D.O. examined Plaintiff, noting a history of several arthroscopic surgeries and one "open" surgery on the left shoulder (Tr. 225). Dr. Richter observed a "ratchety give-way in the entire left upper extremity on muscle testing" and "winging of the scapula," but no other abnormalities (Tr. 226). Neuromuscular testing of the left shoulder showed no evidence of neuropathy, radiculopathy, or entrapment (Tr. 222). In May, 2008, Plaintiff received a prescription for "narcotic" pain medication (Tr. 249). The same month, imaging studies of the cervical spine showed degenerative changes (Tr. 262). In December, 2008, Plaintiff reported right wrist

---

[1]Treating records for conditions unrelated to the disability claim, reviewed in full by the undersigned, are omitted from the present discussion.

pain (Tr. 331). Imaging studies of the right wrist were unremarkable (Tr. 331). He was prescribed morphine (Tr. 322). Plaintiff demonstrated 5/5 strength in all extremities with a limited range of left shoulder motion (Tr. 311). In March, 2009, Plaintiff sought emergency treatment for symptoms of morphine withdrawal (Tr. 291). In May, 2009, Plaintiff received emergency treatment for a rash (Tr. 275).

### 2. Consultive and Non-examining Sources

A July, 2008 non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA by Nicki Bauer found that Plaintiff could lift or carry 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 247). Bauer found that Plaintiff would be unable to perform overhead reaching with the left arm (Tr. 247). Plaintiff's manipulative limitations also consisted of a limitation on reaching with the left arm (Tr. 240). She found the absence of visual, communicative, or environmental limitations (Tr. 249-250). In support of her findings, she citing examination notes showing a normal physical examination except for a limited range of left shoulder motion (Tr. 253).

### 3. Material Submitted Subsequent to the Administrative Decision

In February, 2010 Plaintiff complained of severe lower back pain (Tr. 348, 363). The following month, Dr. Rapp noted 5/5 strength in the lower extremities (Tr. 348). Dr. Rapp noted that recent imaging studies showed only mild degenerative disk disease (Tr. 348). He noted that a CT scan, while showing a disk bulge at L5-S1, was not "bad enough to account for" Plaintiff's reported symptoms (Tr. 349, 350-351, 353, 355, 383, 364).

**C. Vocational Testimony**

VE Michele Peters classified Plaintiff's past work as a hair dresser as exertionally light and skilled and work as a floor installer as heavy and skilled[2] (Tr. 58). In response to the ALJ's questioning, she responded that if Plaintiff were limited to "lifting only 10 pounds, standing and sitting six hours a day, no reaching or handling with the left non-dominant upper extremity," he would be unable to perform his past relevant work, but could perform the work of an information clerk (4,500 positions in the regional economy); host (5,000); and usher (8,000) (Tr. 59). The VE stated that a limitation of "occasional bilateral handling," would reduce the information clerk job numbers by 70 percent and the host and usher numbers by 20 percent (Tr. 60). The VE concluded by stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 61).

**D. The ALJ's Decision**

Citing Plaintiff's medical records, ALJ Poulose found that Plaintiff experienced the severe impairment of left shoulder capsulitis but that the condition did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11). The ALJ

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

found that Plaintiff retained the residual functional capacity ("RFC") to perform exertionally light work "except lift only 10 pounds, sit and stand [six] hours each, and no reaching or handling with the left non-dominant upper extremity" (Tr. 12). Citing the VE's job findings, the ALJ found that Plaintiff could work as an information clerk, host, and usher (Tr. 15).

The ALJ discounted Plaintiff's claims of disability, citing a March 2008 neuromuscular test showing normal results and a negative October, 2007 MRI of the left shoulder (Tr. 13). She found that the objective evidence did not support Plaintiff's need for high dosages of morphine, noting that since quitting morphine, his medication was limited to anti-inflammatories (Tr. 13).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff, proceeding *pro se,* relies upon medical records created both before and after the January 6, 2010 administrative decision to support his claim for benefits.  *Plaintiff's Brief, Docket #16.*  He alleges that subsequent to the administrative opinion, his condition has worsened, alleging that he is now using muscle relaxers and morphine.  *Id.* at 2.  Adopting the arguments contained in his former attorney's Appeals Council brief, he contends that the ALJ's finding that he was capable of exertionally light work is not supported by substantial evidence.  *Id.* at 4-5 (*see also* Tr. 180-181)(same).

### A.  Sentence Six Material

Plaintiff's arguments for remand rely in part on material submitted after the administrative decision.  However, pursuant to 42 U.S.C. § 405(g), this Court cannot consider this evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Cotton v. Sullivan,* 2 F.3d 692, 695–696 (6th Cir.1993).  Rather, where the Appeals Council denies a claimant's request for a review based on later submitted material, sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only* upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." (Emphasis added).  Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g). *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006).

None of the "newer" records provides a basis for a sentence six remand. First, the records contained in Exhibit 9F and a portion of Exhibit 10F of the transcript, dated February, 2010 and forward, refer to Plaintiff's condition subsequent to the ALJ's January 6, 2010 decision and are thus immaterial to the present claim (Tr. 342-360, 362-385). *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 712 (6th Cir.1988). If Plaintiff believes that his condition has worsened since January 6, 2010, the "appropriate remedy" would be to "initiate a new claim for benefits."[3] *Id.* For identical reasons, a copy of a July, 2011 prescription form stating "Totally Disabled," submitted with Plaintiff's summary judgment motion, is not probative of his condition on or before January 6, 2010. *Plaintiff's Brief* at 6. Further, records found in Exhibit 10F of the transcript *predating* the administrative decision are limited to duplicates of treating notes considered by the ALJ and are thus not "new" (Tr. 386-401).

### B. Substantial Evidence

Plaintiff, drawing on his former attorney's brief to the Appeals Council, argues, in effect, that substantial evidence does not support the ALJ's opinion. He cites various imaging studies found in the record to support the contention that he is disabled. *Plaintiff's Brief* at 7-8. However, as correctly noted by the ALJ, the imaging studies and treating notes predating the administrative decision do not point to a disability finding. To the contrary, imaging studies and neuromuscular testing revealed, at most, mild abnormalities inconsistent

---

[3] Further, treating records created in February, 2010 and forward, even if appropriate for consideration, do not strongly support the disability claim.

with Plaintiff's allegations of disabling pain (Tr. 183-184, 216, 222, 226-227, 235, 331).

Plaintiff's related argument that the ALJ improperly discounted his testimony as to morphine use amounts to a mis-characterization of the administrative findings. *Plaintiff's Brief* at 5. Contrary to Plaintiff's contention, the ALJ did not discount his claims of morphine use, but instead, found that the Plaintiff's condition did not support the use of large doses of the opiate (Tr. 13). She noted that since experiencing symptoms of morphine withdrawal in March, 2009, Plaintiff had "not taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain," reasonably concluding that the discontinuance of all pain medicine other than anti-inflammatories stood at odds with allegations of intractable pain (Tr. 13).

Plaintiff also contends that the VE's testimony that he could perform a limited range of light work is not supported by substantial evidence. *Plaintiff's Brief* at 4-5. He asserts that the hypothetical limitation of "lifting only 10 pounds" (Tr. 59) precludes exertionally light work, which requires lifting of up to 20 pounds on an occasional basis. *Id.* ; *see* 20 C.F.R. § 404.1567(b).[4] Section 404.1567 states in pertinent part as follows:

---

[4]

Whether Plaintiff, 50 at the time of the decision, could perform light work is critical since a Step Five finding that he was limited to sedentary work would direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [ ] for only sedentary work, § 201.09, but not if [the] RFC is light. § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986); 20 C.F.R. Pt. 404, Subpt. P., App. 2, Rule 201.09 (1999); *see also Scales v. Commissioner of Social Sec.,* 1996 WL 343533, *2 (6th Cir.1996).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. *Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing,* or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities (emphasis added).

The plain language of the regulation indicates that a job may require less than 20 pounds lifting but still qualify as light work. While 20 pound lifting would be essential to perform a *full* range of light work, the ALJ was not required to show that Plaintiff could perform a full range of exertionally light work, but rather, was capable of a "substantial number" of light positions. *Born v. Sec'y of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir.1990) (citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988). Despite Plaintiff's inability to lift more than 10 pounds, the VE found that he was nonetheless capable of performing more than 10,000 light positions existing in the regional economy (Tr. 60-61). Because this constitutes a "substantial number," the ALJ's finding that he could perform light work (albeit a limited range of light work) is not erroneous. *Born,* at 1174.

In closing, it should be noted that the recommendation to uphold the Commissioner's decision is not intended to trivialize Plaintiff's legitimate impairments. However, I find no error in the ALJ's discussion or conclusions. Moreover, based on a review of this record as a whole, the ALJ's decision is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Doc. #15] be DENIED and that Defendant's Motion for Summary Judgment [Doc. #20] be GRANTED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/ R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

Date:  May 21, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 22, 2012.

| | |
|---|---|
| Theodore V. Motriuk | s/Johnetta M. Curry-Williams |
| 206 Charles Rd | Case Manager |
| Rochester, MI 48307-1602 | |